# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE METROPOLITAN DISTRICT | : | CIVIL ACTION NO.: |
| PLAINTIFF, | : | |
| v. | : | |
| LUDLOW CONSTRUCTION CO., INC., ET. AL | : | SEPTEMBER 22, 2023 |
| DEFENDANTS. | : | |

## THE METROPOLITAN DISTRICT'S COMPLAINT

NOW COMES the Plaintiff, The Metropolitan District ("MDC"), complaining of the Defendants Ludlow Construction Co., Inc. ("Ludlow") and Precision Trenchless, LLC ("Precision"), as follows:

### PARTIES

1. Plaintiff, The Metropolitan District ("MDC"), is a specially chartered municipal corporation created by the Connecticut legislature in 1929 by 29 Special Act No. 511, owns and operates the public water and sanitary sewer system in the towns under its jurisdiction.

2. Defendant, Ludlow Construction Co., Inc. ("Ludlow"), is a Massachusetts company with a principal place of business in Ludlow, Massachusetts.

3. Ludlow is a construction company engaged in, among other things, underground sewer and water infrastructure projects, roadway construction, and site development.

4. Defendant, Precision Trenchless, LLC ("Precision"), is a New York limited liability company with its principal place of business at 1710 Eric Boulevard, Schenectady, New York.

5. Precision is a contractor engaged in the trenchless rehabilitation of underground pipes through the use of ultra-violet cured in place pipe lining.

## JURISDICTION AND VENUE

6.  Jurisdiction is appropriate pursuant to 28 U.S.C. § 1332(a)(l) as the action involves citizens of different states and the amount in controversy exceeds $75,000.00.

7.  Venue is proper in this district based upon 28 U.S.C. §1391(b)(2) as the events which gave rise to the claim occurred within this judicial district and the parties agreed as part of the Contract to venue actions concerning the contract in Hartford County.

## FACTUAL ALLEGATIONS

8.  On or about June of 2015, the MDC issued an Invitation to Bid a project to perform water and sanitary sewer main repair and replacement in Montclair Road and Linbrook Road ("Linbrook Project") in West Hartford, Connecticut.

9.  The documents supporting the Invitation to Bid contained all of the plans, drawings, specifications, and other requirements for the Linbrook Project ("Bid Documents") upon which prospective contractors were to schedule and price work and then submit a sealed bid to the MDC.

10. The MDC issued four addenda to the Bid Documents, one on May 3, 2015, two on May 13, 2016, and a final addendum on May 18, 2016.

11. On or about May 25, 2016, Ludlow submitted a sealed bid to the MDC.

12. On or about September 27, 2016, the MDC awarded the Linbrook Project contract, MDC Contract 2013B-11A ("Contract"), to Ludlow and entered into a contract with Ludlow valued at $5,353,760.00 to perform the Linbrook Project, attached as **Ex.1**. Said Contract incorporated by reference the Project Manual.

13. On May 3, 2017, the MDC issued Ludlow a notice to proceed with the work included in the Contract.

14. Among the scope of services included in the Contract was lining, rather than replacing, certain portions of the sanitary sewer, and, on or about September 22, 2017, Ludlow entered into a separate subcontract agreement with Precision pursuant to which Precision, on behalf of the owner MDC, was to line certain portions of the sanitary sewer servicing property owners along Montclair Drive and Linbrook Road in West Hartford, Connecticut ("Subcontract"). The Subcontract is attached as **Ex. 2**.

15. On or about May 14, 2018, Precision installed Type-S Saertex UV-liner with infused resin (the "Liner") to reinforce and rehabilitate the existing sewer pipe within Linbrook Road in West Hartford, Connecticut.

16. Precision installed the Liner using UV-CIPP, which involves installing a liner into the existing pipe, inflating it within the pipe, and hardening the liner by use of a "light train" which uses ultraviolet lights intended to cause the resin in the Liner to cure in place.

17. On or about August 2, 2022, the subject Liner in the area between Manhole No. 2525069 and Manhole No. 6105294 failed ("the Failure"), resulting in sewer blockages and backed up sewage water within the sanitary sewer pipe.

18. The Failure was caused by the failure of the Liner installed by Ludlow, through its subcontractor, Precision.

19. As a result of the extent of the Failure, the MDC was unable to repair or replace the failed lining in between those manholes identified above and, instead, was required to remove and replace 221 feet of sewer pipe between Manhole No. 2525069 and Manhole No. 6105294.

20. In addition, given the experience with this lining and the likelihood for additional failures in other sections of the lined pipe, the MDC determined that it was in the best interests of property owners in this vicinity to reline the remaining portion of the sewer pipe in order to remove the potential for additional failures. This relining occurred between Manhole No. 6105294 and Manhole No. 2525031.

21. As a result of the Failure, the MDC has incurred substantial sums of money and other expenses pertaining to the replacement of the Liner as well as additional employee resources and time to correct the damage done.

22. The MDC demanded indemnification from and asserted its warranty against Ludlow and Precision by letters from District Counsel Christopher Stone dated September 13, 2022 and May 5, 2023.

23. Ludlow and Precision have acknowledged receipt of MDC's demand and supplemental demand but have not substantively responded.

**COUNT I - BREACH OF CONTRACT- FAILURE IN PERFORMANCE -LUDLOW**

PARAGRAPHS 1-23 of this Complaint are incorporated and re-alleged in this Count.

24. Pursuant to the Contract, Ludlow agreed to perform all work in accordance with the Contract designs, drawings and specifications.

25. Ludlow breached the Contract in that it:

    a.   failed to properly install, or cause to be installed, a safe and functioning liner as specified in the Contract;

    b.   failed to comply with the terms and conditions set forth in the Contract;

    c.   used or caused to be used a liner installation process that was deficient and resulted in the subject Failure within the Linbrook Project; and

    d.   failed to ensure that its finished work was safe for reasonably foreseeable use.

26. As a result of the above, MDC has incurred and will continue to incur damages.

**COUNT II - BREACH OF CONTRACT- FAILURE IN PERFORMANCE – PRECISION**

PARAGRAPHS 1-23 of this Complaint are incorporated and re-alleged in this Second Count.

27. Pursuant to Article 2 contained within the Subcontract, "The Subcontractor agrees to be bound to the contract by the terms and conditions of the contractor's agreement with the owner... the subcontractor further agrees that all conditions and requirements imposed or to be imposed upon the contractor by its contract with the owner shall be performed by the subcontractor insofar as applicable to the work under subcontract and the subcontractor hereby assumes toward the contractor all objections and responsibilities that the contractor by contrast has assume or will assume toward the owner with respect to said work." **Ex. 2.** Accordingly, the MDC is an intended third-party beneficiary of said Subcontract

28. Precision breached its duties under the Subcontract by failing to properly install a safe and functioning liner as required pursuant to the Contract in that it:

    a.   failed to properly install, or cause to be installed, a safe and functioning liner as specified in the Contract and Subcontract;

    b.   failed to comply with the terms and conditions set forth in the Contract and Subcontract;

    c.   used or caused to be used a liner installation process that was deficient and resulted in the subject Failure within the Linbrook Project; and

    d.  failed to ensure that its finished work was safe for reasonably foreseeable use.

29. As a result of the above, MDC has incurred damages.

## COUNT III - BREACH OF CONTRACT - FAILURE TO IDEMNIFY- LUDLOW

PARAGRAPHS 1-23 of this Complaint are incorporated and re-alleged in this Third Count.

30. Under Section 6.20 of the Project Manual, entitled "Indemnification," incorporated by reference by the Contract, Ludlow is required:

    A.  To the fullest extent permitted by Laws and Regulations, Contractor shall defend, indemnify and hold harmless Owner, any municipality included therein, the State of Connecticut, Engineer, and the officers, directors, shareholders, members, partners, employees, agents, consultants and subcontractors of each and any of them (collectively, the "Indemnitees") from and against all claims, costs, losses and damages (including but not limited to all fees and charges of engineers, architects, attorneys and other professionals and all court or arbitration or other dispute resolution costs) arising out of or relating to the performance (or attempted performance) of the Work, including any maintenance or warranty Work and the use, misuse, or failure of any machinery or equipment (including but not limited to scaffolding, ladders, hoists, rigging and supports) whether or not such machinery was furnished, rented, or loaned by the Owner or any other Indemnitee. This indemnity shall survive the termination or expiration of this Contract and shall cover all matters arising thereunder or in connection therewith, including but not limited to the following:

    F.  If Contractor fails to defend any Indemnitee hereunder, such Indemnitee may defend any suit, action or other legal proceeding and the costs thereof (including, without limitation, attorneys' fees) shall be included as part of the loss, cost, damage and expense covered by the foregoing indemnities of Contractor.

31. By letters dated September 13, 2022 and May 5, 2023, MDC made demand upon Ludlow for indemnification, and Ludlow has failed to fulfill its obligation to do so.

32. As a result of the above, MDC has incurred damages.

## COUNT IV - BREACH OF CONTRACT - FAILURE TO IDEMNIFY - PRECISION

PARAGRAPHS 1-23 of this Complaint are incorporated and re-alleged in this Fourth Count.

33. Under the terms of the Subcontract between Ludlow and Precision, the MDC is a third party beneficiary of said contract in that, pursuant to Article 10, Precision has agreed to "indemnify, and hold harmless, and defend the Owner, Contractor, Architect, Architect's consultants, and the agents and employees of any of them from and against all injuries, claims, damages, losses and expenses, including but not limited to attorney's fees, directly or indirectly arising out of or resulting from performance of the Subcontractor's Work under this Subcontract... Further Precision agrees to be bound to the contractor by the terms and conditions of the contractor's agreement with the owner." **Ex. 2.** Accordingly, the MDC is an intended third-party beneficiary of said Subcontract.

34. By letters dated September 13, 2022, and May 5, 2023, MDC notified Precision of the damages that it had incurred and of its intent to hold Precision responsible. Precision has failed to acknowledge and fulfill its responsibility.

35. As a result of the above, MDC has incurred damages.

## COUNT V – NEGLIGENCE - PRECISION

PARAGRAPHS 1-23 of this Complaint are incorporated and re-alleged in this Fifth Count.

36. As the intended third-party beneficiary of the Subcontract, Precision owed MDC a duty to use reasonable care in the performance of its duties as specified in the Subcontract.

37. Precision was negligent in that it:

   a. Failed to exercise the requisite level of skill, care and knowledge required of a subcontractor acting in the same or similar circumstances;

   b. Failed to properly install and inspect the Liner which caused the Failure; and

   c. Failed to provide a Liner that was safe and conformed with the contract.

38. As a result of the above, MDC has incurred damages.

## COUNT VI - BREACH OF WARRANTY- LUDLOW

PARAGRAPHS 1-23 of this Complaint are incorporated and re-alleged in this Sixth Count.

39. By entering into the Contract, Ludlow expressly warranted the following:

     a.   Ludlow warrants and guarantees for a period of one year from the date of substantial completion of the system that the completed system is free from all defects due to faulty materials, equipment or workmanship and Ludlow shall promptly make whatever adjustments or corrections necessary to cure such defects including repairs of any damage to other parts of the system resulting from such defects. (Bid Document 00820-6), attached as **Ex. 3.**[1]

40. The Failure constitutes a breach of the warranties provided by Ludlow as to the liner and its installation because, in part, the liner and its installation failed to meet the standards set forth in the Contract, and in both respects, was defective.

41. MDC reasonably relied upon these warranties and representations as part of the Contract.

42. Pursuant to the Contract, Ludlow agreed to perform all work in accordance with the Contract design, drawings, and specifications.

43. Despite demand, Ludlow has refused and/or neglected to fulfill its warranty obligations.

44. As a result of the Collapse, MDC has incurred damages.

## COUNT VII -BREACH OF WARRANTY- PRECISION

PARAGRAPHS 1-23 of this Complaint are incorporated and re-alleged in this Seventh Count.

45. Pursuant to the Subcontract, Precision agreed to warrant all labor and materials for the period of one year from the date of final payment by the owner or as specified in the contract, *see* **Ex. 2 ¶7**. Pursuant to the Subcontract, the MDC is an intended third- party beneficiary.

46. The Failure constitutes a breach of the warranties provided by Precision as to the liner and its installation because, in part, the liner and its installation failed to meet the standards set forth in the Contract, and in both respects, was defective.

---

[1] The Bid Document is 426 pages long. Plaintiff will only attach applicable sections.

47. MDC reasonably relied upon these warranties and representations as part of the Contract.

48. Despite demand, Precision has refused and/or neglected to fulfill its warranty obligations.

49. As a result, MDC has incurred damages.

**WHEREFORE,** the Plaintiff claims:

**FIRST COUNT-BREACH OF CONTRACT-FAILURE IN PERFORMANCE - LUDLOW,** the Plaintiff, MDC, requests the following relief:

    1. Money damages;

    2. Reasonable attorneys' fees and costs;

    3. Prejudgment interest, including those attributable pursuant to Conn. Gen. Stat. § 37-3a; and

    4. Any other relief that this court deems just and equitable.

**SECOND COUNT-BREACH OF CONTRACT- FAILURE IN PERFORMANCE - PRECISION,** the Plaintiff, MDC, requests the following relief:

    1. Money damages;

    2. Reasonable attorneys' fees and costs;

    3. Prejudgment interest, including those attributable pursuant to Conn. Gen. Stat. § 37-3a; and

    4. Any other relief that this court deems just and equitable.

**THIRD COUNT-BREACH OF CONTRACT-FAILURE TO INDEMNIFY LUDLOW,** the Plaintiff, MDC, requests the following relief

    1. Money damages;

    2. Reasonable attorneys' fees and costs;

    3. Prejudgment interest, including those attributable pursuant to Conn. Gen. Stat. § 37-3a; and

    4. Any other relief that this court deems just and equitable.

**FOURTH COUNT-BREACH OF CONTRACT-FAILURE TO INDEMNIFY - PRECISION,** the Plaintiff, MDC, requests the following relief:

1. Money damages;

2. Reasonable attorneys' fees and costs;

3. Prejudgment interest, including those attributable pursuant to Conn. Gen. Stat. § 37-3a; and

4. Any other relief that this court deems just and equitable.

**FIFTH COUNT - NEGLIGENCE - PRECISION,** the Plaintiff, MDC, requests the following relief:

1. Money damages;

2. Reasonable attorneys' fees and costs;

3. Prejudgment interest, including those attributable pursuant to Conn. Gen. Stat. § 37-3a; and

4. Any other relief that this court deems just and equitable.

**SIXTH COUNT- BREACH OF WARRANTY- LUDLOW,** the Plaintiff, MDC, requests the following relief:

1. Money damages;

2. Reasonable attorneys' fees and costs;

3. Prejudgment interest, including those attributable pursuant to Conn. Gen. Stat. § 37-3a; and

4. Any other relief that this court deems just and equitable.

**SEVENTH COUNT-BREACH OF WARRANTY- PRECISION,** the Plaintiff, MDC, requests the following relief:

1. Money damages;

2. Reasonable attorneys' fees and costs;

3. Prejudgment interest, including those attributable pursuant to Conn. Gen. Stat. § 37-3a; and

4. Any other relief that this court deems just and equitable.

RESPECTFULLY SUBMITTED,
PLAINTIFF, THE METROPOLITAN
DISTRICT

By: _____
William J. Sweeney, Jr. Esq. (ct04325)
Law Offices of William J. Sweeney, Jr.,
LLC
One Liberty Square
New Britain, CT  06051
Tel: (860) 827-6453
Fax:(860) 225-0626
Email: wjs@sweeneylawllc.com

Brendan M. Fox, Jr. (ct04845)
The Metropolitan District
555 Main Street
P.O. Box 800
Hartford, CT 06142
Phone: 860-278-7850
Email: BFox@themdc.com

-And-

Christopher R. Stone, Esq. (ct302859)
The Metropolitan District
555 Main Street
P.O. Box 800
Hartford, CT 06142
Phone: 860-278-7850
Email: CStone@themdc.com

*Counsel for Plaintiff The Metropolitan
District*

# EXHIBIT 1

### THE METROPOLITAN DISTRICT

### Water and Sanitary Sewer Main Replacement in Montclair Drive and Linbrook Road, West Hartford

### CONTRACT NUMBER 2013B - 11A

### AGREEMENT

THIS AGREEMENT is made as of the _27_ day of _September_ in the year 20_16_ by and between The Metropolitan District, a Connecticut municipal corporation having an office at 555 Main Street, Hartford, Connecticut, hereinafter called Owner, or District acting through its Chief Executive Officer, and

_Ludlow Construction Co. Inc._

with legal address and principal place of business at _19 Carmelina's Circle_ _Ludlow, MA 01056_ hereinafter called Contractor.

Owner and Contractor in consideration of the mutual covenants hereinafter set forth, agree as follows:

ARTICLE 1. WORK.

1.1   Contractor shall perform the Work as specified or indicated in the Contract Documents. The Work is as described in SECTION 01010.

ARTICLE 2. ENGINEER.

2.1   The Project has been designed by Paul Rodriguez of Freeman Companies, LLC. Unless advised otherwise, the Owner will act as Engineer in connection with completion of the Work in accordance with the Contract Documents.

ARTICLE 3. CONTRACT TIME.

3.1   The Contract Time shall be 300 Calendar Days commencing on the date in the Notice to Proceed issued by the Owner.

3.2   Contractor agrees that the Work shall be prosecuted regularly, diligently and uninterruptedly and at such rate of progress as will insure full completion thereof within the Contract Time stated above. It is expressly understood and agreed, by and between Contractor and Owner that the Contract Time is reasonable for the completion of the Work, taking into consideration the average climatic range, and usual industrial conditions prevailing in this locality.

The number of calendar days for the completion of the Work, included in this Article 3 of

00500-1

the Agreement shall not include the time period from each December 1 through the following March 31 (the "winter shutdown period"). The Contract time will begin to run on the date designated in the Notice to Proceed as the date for the commencement of the Project and the time will be computed on a consecutive-day basis including all Saturdays, Sundays, holidays and non-work days from April 1 through November 30 of each included year. With the approval of the Engineer, the Contractor may perform work during the winter shutdown period, with any charge against the Contract Time or other charge being a part of the approval. Should the Contractor fail to complete the Project prior to December 1 of a given year, any remaining Contract Time will recommence on April 1 of the following year.

3.3 The Contractor shall not be entitled to costs for delay due to Owner ordered Modifications or any other circumstances for the period of time between the Contractor's elected early completion and the end of the Contract Time. Such costs include, but are not limited to, extended home office costs, field office costs, or supervisory and management costs incurred in performance of the Work. Early completion of the Work shall not merit additional compensation.

ARTICLE 4. CONTRACT PRICE.

4.1 Owner will pay Contractor for performance of the Work in accordance with the Contract Documents in current funds at the unit price agreed upon in the Contractor's Bid Form a copy of which Bid Form is included as Section 00300 of the Contract Documents.

4.2 This award shall be made in acceptance of the Contractor's Bid, (inclusive of Bid Alternate(s) _Provisional Sums Items_) for a total award value of $ _5,353,760.00_ as shown in the Bid Form.

ARTICLE 5. APPLICATIONS FOR PAYMENT

5.1 Contractor shall submit Applications for Payment in accordance with Article 14 of the Standard General Conditions of the Construction Contract which are a part of the Contract Documents (the "Standard General Conditions"). Applications for Payment will be processed by Engineer as provided in the Standard General Conditions.

ARTICLE 6. PROGRESS AND FINAL PAYMENTS

6.1 Owner will make progress payments and final payment in accordance with Article 14 of the Standard General Conditions of the Construction Contract which are a part of the Contract Documents (the "Standard General Conditions").

ARTICLE 7. LIQUIDATED DAMAGES

7.1 Owner and Contractor recognize that TIME IS OF THE ESSENCE of this Agreement and further, that Owner will suffer financial loss if the Work is not completed within the Contract Time specified in Article 3 above, plus any extensions thereof allowed in accordance with Article 12 of the Standard General Conditions. The parties hereto also recognize the delays, expense and difficulties involved in proving, in a legal or arbitration proceeding, the actual loss suffered by Owner if the Work is not completed on time. Accordingly, instead of requiring any such proof, Owner and Contractor agree

00500-2

that, as liquidated damages for delay (but not as a penalty), Contractor shall pay Owner $2,100.00 per day for each calendar day of delay beyond the last day of the Contract Time (as it may be extended in accordance with the Contract Documents) that the Work is not fully complete.

7.2  Provided, that Contractor shall not be charged with liquidated damages or any excess cost when the delay in completion of the Work is for reasons included in Paragraph 12.03 A of the Standard General Conditions.

7.3  Provided, further that Contractor shall submit the required notification of Contractor's claim for such delays in accordance with Paragraph 12.02 of the Standard General Conditions.

ARTICLE 8. ASSURANCE

8.1  Contractor has familiarized itself with the nature and extent of the Contract Documents, Work, locality, and with all local conditions and Federal, State and local laws, ordinances, rules and regulations that in any manner may affect cost, progress or performance of the Work.

8.2  Contractor has made or caused to be made examinations, investigations and tests and studies of such reports and related data as Contractor deems necessary for the performance of the Work at the Contract Price within the Contract Time and in accordance with the other terms and conditions of the Contract Documents; and no additional examinations, investigations, tests, reports or similar data are or will be required for such purposes.

8.3  Contractor has correlated the results of all such observations, examinations, investigations, tests, reports and data with the terms and conditions of the Contract Documents.

8.4  Contractor has given Engineer written notice of any conflict, error or discrepancy that Contractor has discovered in the Contract Documents and the written resolution thereof by Engineer is acceptable to Contractor.

8.5  Contractor agrees that the Contract Documents are sufficient in scope and detail to indicate and convey understanding of all terms and conditions for performance of the Work in accordance with the Contract Documents.

8.6  In accordance with Section 215 of the Clean Water Act, and implementing EPA regulations and guidelines, Contractor agrees that preference will be given to domestic construction material by Contractor, subcontractors, materialmen and suppliers in the performance of the Work.

ARTICLE 9. CONTRACT DOCUMENTS.

9.1  The Contract Documents which comprise of the Contract between Owner and

00500-3

Contractor are included in the Project Manual as modified by the Special Provisions, as noted below and or attached hereto and made a part hereof and consist of the following:

9.1.1 Invitation To Bid.

9.1.2 Instructions To Bidders.

9.1.3 Bid Form.

9.1.4 This Agreement.

9.1.5 Performance Bond, Payment Bond, and other required Bonds.

9.1.6 Certificate of Insurance.

9.1.7 General Conditions, EJCDC Document No. C-700, 2007 edition (as modified).

9.1.8 Supplementary Conditions

9.1.9 Special Provisions

9.1.10 Specifications (as listed in Table of Contents).

9.1.11 Contract Drawings dated JUNE 2015, enumerated as follows:

| DWG NO. | DESCRIPTION |
|---|---|
| 1 | TITLE SHEET |
| 2 | GENERAL NOTES |
| 3 | LEGEND AND ABBREVIATIONS |
| 4 | KEY PLAN - MONTCLAIR DRIVE |
| 5-7 | MONTCLAIR DR. PLAN AND PROFILE FOR SANITARY SEWER REPLACEMENT |
| 8-11 | MONTCLAIR DR. PLAN AND PROFILE FOR WATER MAIN REPLACEMENT |
| 12 | KEY PLAN - LINBROOK ROAD |
| 13-14 | LINBROOK RD. PLAN AND PROFILE FOR SANITARY SEWER REPLACEMENT |
| 15-16 | LINBROOK RD. PLAN AND PROFILE FOR WATER MAIN REPLACEMENT |
| 17-20 | MAINTENANCE AND PROTECTION OF TRAFFIC |
| 21-23 | STANDARD DETAILS |

9.1.12  Addenda numbers _____1_____ to ____4____, inclusive.

9.1.13  Any modification, including Change Orders, duly delivered after execution of Agreement.

## ARTICLE 10. MISCELLANEOUS

10.1  Terms used in this Agreement which are defined in Article 1 of the Standard General Conditions shall have the meanings set forth in the Standard General Conditions.

10.2  Neither Owner nor Contractor shall, without the prior written consent of the other, assign or sublet in whole or in part any interest under any of the Contract Documents; and, specifically but without limitation, Contractor shall not assign any monies due or to become due without the prior written consent of Owner.  In case Contractor assigns all or any part of any monies due or to become due under the Contract Documents, the instrument of assignment shall contain a clause substantially to the effect that it is agreed that the right of the assignee in and to any monies due or to become due to Contractor shall be subject to prior claims of all persons, firms and corporations for services rendered or materials supplied for the performance of the Work called for in the Contract Documents.

10.3  Owner and Contractor each binds itself, its successors, assigns and legal representatives in respect to all covenants, agreements and obligations contained in the Contract Documents.

10.4  The Contract Documents constitute the entire agreement between Owner and Contractor and may only be altered, amended or repealed by written agreement signed by both Owner and Contractor.

{00509869.DOC 3}

IN WITNESS WHEREOF, the parties hereto have signed this Agreement. All portions of the Contract Documents have been signed or identified by The MDC and Contractor or by Engineer on their behalf.

This Agreement shall become effective on _September 27_, 2016.

THE METROPOLITAN DISTRICT

By: Kelly J. Shane
Title: Director of Procurement

CONTRACTOR

By
Title: President

(CORPORATE SEAL)

Attest

John S. Mirtle, District Clerk

Address for giving notices

555 Main Street

P.O. Box 800

Hartford, CT 06142

(CORPORATE SEAL)

Attest

Michael J. Pio, Clerk

Address for giving notices

19 Carmelina's Circle

Ludlow, MA 01056

Note: If Contractor is a corporation, an affidavit giving the principal the right to sign the Agreement must accompany the executed Agreement.

Approved as to Form and Content:

R. Bartley Halloran
District Counsel
{ 00503869.DOC 3 }

00500-6

# EXHIBIT 2

# AGREEMENT BETWEEN

# CONTRACTOR AND SUBCONTRACTOR

**AGREEMENT** _____ day of September in the year 2017

**BETWEEN the Contractor:**   Ludlow Construction Co., Inc., 19 Carmelina's Circle, Ludlow, MA

**and the Subcontractor:**   Precision Trenchless LLC, Schenectady Office, 1710 Erie Blvd, Schenectady, NY 12308

**The Owner:**   The Metropolitan District, 555 Main Street, Hartford, CT 06103

**The Project:**  Water and Sanitary Sewer Main Replacement in Montclair Drive and Linbrook Road, West Hartford - 2013B-11A

**The Project Engineer or Architect:**  Freeman Companies, 36 John Street, Hartford, CT 06106

WHEREAS, the Subcontractor, having examined the said General Contract Documents (General Conditions, Special or supplemental Conditions, Plans, Drawings, Specifications) and the site of all operations to be conducted thereunder, is desirous of entering into a Subcontract with the Contractor on the Terms and Conditions hereinafter set forth.

## Article 1
### The Contract Documents

The Contract Documents consist of this Agreement and the project documents. These are fully a part of the Contract and are incorporated by reference. An enumeration of the conditions of the Contract Documents appears in article 9 and are attached and incorporated into this agreement. This Agreement shall constitute the entire contract between the parties and may not be altered or amended in any respect except by writing duly executed by the parties hereto.

## Article 2
### The Work

The Contractor shall perform all the Work required by the Contract Documents for Water and Sanitary Sewer Main Replacement in Montclair Drive and Linbrook Road, West Hartford - 2013B-11A attached to these contract documents. The Subcontractor will furnish and pay for all work, materials, labor, equipment, tools, lights, power, details, computations, drawings schedules, necessary scaffolding and shall in a good substantial, thorough and workmanlike manner perform and in every respect complete this Project according to the plans and specifications, details thereof to be furnished as needed and to the full satisfaction of the Architect, Engineer, or Owner or their designee.

This Subcontractor shall, without extra charge, clear the premises of debris and excess material caused by its operations as the work progresses.

The Subcontractor agrees to be bound to the contractor by the aforementioned Contract Documents and all other instruments herein referred to and further assumes toward the Contractor all obligations and responsibilities pertaining to the afore described work that the Contractor by the aforesaid General Contract has assumed to the Owner or General Contract. The Subcontractor shall comply with all rulings, orders, instructions and operating procedures

1

issued or promulgated by the Contractor with respect to said work described below. The Subcontractor further agrees that the Contractor shall, in connection with the work called for the Subcontractor, have all the rights, privileges, and immunities which the Owner and/or General Contractor has in connection with its contract with the Contractor.

Subcontractor's work consists of:

| Description | Quantity | Unit Price | Total |
|---|---|---|---|
| Mobilization | 1 LS | $5,000.00 | $5,000.00 |
| 8" Lining | 1,770 LF | 52.00 | 92,040.00 |
| 27" Lining | 2,160 LF | 150.00 | 324,000.00 |
| Laterals (Reinstate & Protruding) | 132 EA | 200.00 | 26,400.00 |

Price includes:
- Pre and post CCTV
- Installation as per project plans & specifications
- Reinstatement of laterals and cutting of protruding laterals.
- Confirmation cleaning just prior to installing liner

Price Excludes:
- Bypass
- Traffic Control

All work shall be performed in a safe and workmanlike manner, and all finished work shall be safe for all reasonably foreseeable uses. All work shall be done according to all applicable laws, codes and regulations, including but not limited to applicable building codes, safety codes and environmental regulations.

### Article 3
### Time of Commencement and Substantial Completion

The Subcontractor knows that the Contractor must have its Contract performed on or before the date specified in the contract specifications; and it is therefore understood and agreed that the work provided for herein shall be entirely complete on or before _____

The Subcontractor will furnish said materials and equipment and prosecute said work with due diligence, without delay. Should the Contractor conclude that the Subcontractor is delaying said work, the Contractor shall notify said Subcontractor in writing, who shall within three days thereafter furnish whatever materials are required and employ additional labor as required. If the Subcontractor fails to comply with said demand, the Contractor shall have the right to supply all required materials and complete the work on its own or with assistance of other contractors. In that event, the Subcontractor shall be liable for any excess charges reasonably incurred the Contractor pursuant to this provision.

In the event any delay in the completion of the General Contract is caused or occasioned by the Subcontractor, which causes or results in damages being incurred by the Contractor including but not limited to liquidated damages as assessed by the Owner against the Contractor under the provisions of the General Contract, a sum equal to such damages or expenses including such liquidated damages as assessed shall be chargeable to and paid by the Subcontractor to the Contractor and shall not be construed as imposing a penalty.

### Article 4
### Insurance Requirements

The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of coverage and limits of liability:

1. Commercial General Liability (CGL) with limits of Insurance of not less than $1,000,000 each occurrence and $2,000,000. Annual Aggregate.
    i. CGL coverage shall be written on ISO Occurrence form CG 00 01 10 01 or a substitute form

2

> ii. providing equivalent coverage and shall cover liability arising from premised, operations, independent contractors, products-completed operations, and personal and advertising injury.
>
> ii. Contractor, General Contractor, Owner and all parties require of the Contractor, shall be included as insured's on the CGL, using ISO additional Insured Endorsement CG 2010 11 85 or CG 2010 (10/01) and CG 20 37 (10/01) or CG2033 (10/01) and CG2037 (10/01) an endorsement providing equivalent coverage to the additional insured's. This insurance for the additional insured's shall be as broad as the coverage provided for the named insured or self-insurance including any deductible, maintained by or provided to the additional insured.
>
> iii. Subcontractor shall maintain CGL coverage for itself and all additional insured's for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least 3 years after completion of the Work.

2. Automobile Liability
   i. Business Auto Liability with limits of at least $1,000,000 each accident.
   ii. Business Auto coverage must include coverage for liability arising out of all owned, leased and hired and non owned automobiles.
   iii. Contractor, General Contractor, Owner and all other parties required of the Contractor, shall be included as insured's on the auto policy.

3. Commercial Umbrella
   i. Umbrella limits must be as least $5,000,000.
   ii. Umbrella coverage must include as insured's all entities that are additional insured on the CGL.
   iii. Umbrella Coverage for such additional insured's shall apply as primary before any other insurance or self-insurance, including any deductible, maintained by, or provided to the additional insured other that the CGL, Auto Liability and Employers Liability coverage's maintained by the Subcontractor.

4. Workers Compensation and Employers Liability
   i. Employers Liability Insurance limits of at least $500,000 each accident for bodily injury by accident and $500,000 each employee for injury by disease.
   ii. Where applicable, U.S. Longshore and Harborworkers' Compensation Act Endorsement shall be attached to the policy.
   iii. Where applicable, the Maritime Coverage Endorsement shall be attached to the policy.
   iv. Subcontract will comply with the insurance as stated in the contract specifications if different than the above.

Waiver of Subrogation

Waiver of Subrogation - Subcontractor waives all rights against Contractor, Owner and Architect and their agents, officers, directors and employees for recovery of damages to the extent these damages are covered by commercial general liability, commercial umbrella liability, business auto liability or workers compensation and employers liability insurance maintained per requirements stated above.

Article 5
The Contract Sum

The Contractor shall pay the Subcontractor in current funds for the performance of the Work, subject to additions and deductions by Change Order as provided in the Contract Documents, the Contract Sum shall be as determined by the Owner's Engineer's estimates of quantities.

The Contract Sum is determined as follows:

*Owner's quantities multiplied by the unit prices as shown in Article 2.*

The actual contract amount will be determined by the owners actual quantities installed or performed. Quantities may fluctuate up or down.

No extra work or changes under this contract will be recognized unless authorized by the Contractor and unless agreed to in writing before the work is done or the changes made; in which writing shall be specified

in detail the extra work or changes desired, the price to be paid or the amount to be deducted should changes decrease the amount to be paid hereunder.

## Article 6
### Payments

In consideration whereof, the Contractor agrees to pay to the Subcontractor, in monthly payments, and amount equal to the sum of the Engineer's or Architect's estimate for said materials and work, said amount to be paid within thirty days from receipt of by Contractor of Subcontractor's invoice for such work. Subcontractor acknowledges and agrees that Contractor shall withhold Five Percent (5%) from each approved invoice as retainage, which amount shall be released within 10 days of receipt by Contractor of final payment from Owner and satisfactory evidence is furnished to the Contractor by the Subcontractor that all labor and material accounts for use on this particular work have been paid in full.

## Article 7
### Warranty

The Subcontractor shall warranty all labor and materials for the period of one year from the date of final payment by the Owner or as specified in the contract documents.

## Article 8
### Conditions of the Contract

Terms used in this Agreement shall have the meaning defined in the contract documents, or in the absence of such specific definition, shall be defined by their plain meaning.

The Contract Documents which constitute the entire agreement between the Contractor and the Subcontractor, are listed in Article 1 and include Modifications issued after execution of this Agreement. These are subject to the following conditions:

a. The Subcontractor will require its subcontractors to maintain insurance coverage which is at least equal to those set forth in this Article. The requirements contained herein as to types and limits, as well as Contractor's approval of insurance coverage to be maintained by subcontractor are not intended to and shall not in any matter limit or qualify the liabilities or obligations assumed by the Subcontractor under this Subcontract.

b. Subcontractor shall pay all sales taxes, use taxes, excise taxes, old age benefit and unemployment compensation taxes upon the material and labor furnished under this contract as required by the Statutes of the United States Government and the State in which this work is performed.

c. If a direct demand for payment be made to the Contractor by a supplier to the Subcontractor for work on this Project, the Contractor may direct pay the supplier and deduct said payment from future payments to the Subcontractor on the basis of the Contractor's determination.

d. The Subcontractor shall comply with all applicable laws, ordinances, rules, regulations and orders of any public authority. The Contractor reserves the right to stop work and terminate this project at any time if it is determined that the Subcontractor is not in conformance with this paragraph. If the Subcontractor fails to comply, the Contractor shall have the right to supply all required materials and complete the work on its own or with the assistance of other subcontractors. In that event, the total cost to the Contractor shall not exceed the Contract Sum for the work, and the Subcontractor shall be liable for any excess charges reasonably incurred by the Contractor pursuant to this provision.

e. Should OSHA, EPA or any government entity impose any fine, order or cost on the Contractor for work performed by the Subcontractor or its agents or sub-subcontractors, the Subcontractor shall pay all such fines, penalties or costs associated with any such orders. The Contractor may deduct said amount against any payment due the Subcontractor. To the fullest extent permitted by law, the Subcontractor hereby acknowledges and agrees that it shall indemnify, hold harmless and defend the Contractor, the General Contractor, the Owner and any of their officers, directors,

4

employees, agents, affiliates, subsidiaries and partners from and against all claims, damages, losses and expenses, including but not limited to, attorney's fees, arising out of or resulting from the performance of the Subcontractor's Work under this Contract.

f.   The Subcontractor hereby acknowledges its obligation under the foregoing paragraph to indemnify the Contractor against judgments suffered because of the Subcontractor's, or its agents or it subsubcontractor's work and to assume the cost of defending the Contractor against claims as described in the foregoing paragraph.

g.   Neither this Subcontract nor any of the funds due or becoming due hereunder may be assigned or sublet by the Subcontractor without the prior written consent of the contractor. The Contractor reserves the right to approve all additional subcontractors and material suppliers.

h.   This Agreement shall not become effective until the Subcontractor is approved by the Owner and/or General Contractor as the Subcontractor for the work described herein if such approval is required by the Owner.

i.   In the event that the Subcontractor becomes insolvent, or is adjudged bankrupt or makes an assignment for the benefit of creditors or if a Receiver is appointed to administer its affairs or if reorganization proceedings are brought by or against the Subcontractor under Chapter X, XI, or XII of the Bankruptcy Act, or it becomes otherwise disabled from performing this Agreement in accordance with its terms, the Contractor may immediately terminate this Subcontract by written notice to the Subcontractor.

j.   The Subcontractor confirms that the Work performed by the Subcontractor on the Project, prior to the date on which this Agreement is fully executed, is subject to the terms and conditions of this Agreement and that all representations and warranties made by the Subcontractor herein are retroactive to the date on which the Subcontractor commenced work on the Project.

## Article 10
## Indemnification Clause

To the fullest extent permitted by law, the Subcontractor shall indemnify, and hold harmless, and defend the Owner, Contractor, Architect, Architect's consultants, and the agents and employees of any of them from and against all injuries, claims, damages, losses and expenses, including but not limited to attorney's fees, directly or indirectly arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury or destruction of tangible property (other than the Work itself), but only if the claim, damage, loss or expense is caused by, connected with, arising out of or resulting from an act or omission of the Subcontractor, the Subcontractor's sub-subcontractors, anyone directly or indirectly employed by any of them or anyone for whose acts they may be liable. The Subcontractor shall not be required by this agreement to indemnify a party for that portion of any loss that is directly attributable to the negligence of the party to whom indemnification is owed, except to the extent such indemnification is permitted by law.

Such obligations shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this section.

To the fullest extent permitted by law, the Subcontractor agrees to assume the defense of the Owner, the Contractor, the Architect, the Architect's consultants, and the agents and employees of any of them, in any claim, proceeding, lawsuit, and/or litigation arising out of any accident, incident, or occurrence that is caused by, connected with, arising out of, or resulting from the performance of the Subcontractor's work under this contract.

The subcontractor agrees that the obligation to defend commences when a claim is made against the Owner, Contractor, Architect, Architect's consultants, and/or the agents and employees of any of them, even if the subcontractor disputes its obligation to indemnify and hold harmless. The party being defended shall have the right to choose its own counsel. The subcontractor agrees to pay for defense of the Owner, Contractor, Architect, Architect's consultants, and the agents and employees of any of them, with counsel chosen by the party to be defended, upon demand.

The subcontractor agrees to be bound to the contractor by the terms and conditions of the contractor's agreement with the owner, a copy of said agreement being available for inspection at the office of the

contractor. The subcontractor further agrees that all conditions and requirements imposed, or to be imposed, upon the contractor by its contract with the owner shall be performed by the subcontractor insofar as applicable to the work under the subcontract, and the subcontractor hereby assumes toward the contractor al obligations and responsibilities that the contractor, by contract, has assumed or will assume toward the owner with respect to said work.

LAW TO APPLY- This Agreement and all Contracts hereunder shall be governed and interpreted under the laws of the State of Connecticut, and venue shall be maintainable in Hartford County, State of Connecticut.

This Agreement entered into as to the day and year first written above.

Contractor:

Ludlow Construction Co., Inc.

Witness: Paul Fragos

Date: 9/22/17

Subcontractor:

Mark Kilburn

Precision Trenchless LLC

Witness:

Date: 9.16.2017

6

# EXHIBIT 3

# THE METROPOLITAN DISTRICT
## HARTFORD COUNTY, CONNECTICUT

## Special Provisions
### FOR

## Water and Sanitary Sewer Main Replacement in Montclair Drive and Linbrook Road, West Hartford, CONNECTICUT

## CONTRACT NO. 2013B-11A

## BID DATE  MAY 24, 2016



officer or employee.

## 22a-482-4 (g)(13) Responsibility of the CONTRACTOR

(A) The CONTRACTOR agrees to perform all work under this agreement in accordance with this agreement's designs, drawings, and specifications.

(B) The CONTRACTOR warrants and guarantees for a period of one (1) year from the date of substantial completion of the system that the completed system is free from all defects due to faulty materials, equipment or workmanship; and the CONTRACTOR shall promptly make whatever adjustments or corrections necessary to cure such defects, including repairs of any damage to other parts of the system resulting from such defects. The municipality shall give notice to the CONTRACTOR of observed defects with reasonable promptness. In the event that the CONTRACTOR fails to make adjustments, repairs, corrections or other work that may be made necessary by such defect, the municipality may do so and charge the CONTRACTOR the cost incurred. The performance bond shall remain in full force and effect through the guarantee period.

(C) The CONTRACTOR's obligations under this clause are in addition to the CONTRACTOR's other express or applied warranties under this agreement or State law and in no way diminish any other rights that the municipality may have against the CONTRACTOR for faulty material, equipment, or work.

## 22a-482-4 (g)(14) Final payment

Upon satisfactory completion of the work performed under this agreement, as a condition before final payment under this agreement, or as a termination settlement under this agreement, the CONTRACTOR shall execute and deliver to the municipality a release of all claims against the municipality arising under or by virtue of this agreement, except claims which are specifically exempted by the CONTRACTOR to be set forth therein. Unless otherwise provided in this agreement or by State law or otherwise expressly agreed to by the parties to this agreement, final payment under this agreement or settlement upon termination of this agreement shall not constitute a waiver of the municipality's claims against the CONTRACTOR or his sureties under this agreement or applicable performance and payment bonds.

## 22a-482-4(h) PROCUREMENT REQUIREMENTS – GENERAL

## 22a-482-4(h)(1) Applicability

This defines the responsibilities of the State and the municipality and the minimum procurement standards for each municipality's procurement system.

## 22a-482-4(h)(2) Municipality responsibility

(A) The municipality is responsible for the settlement and satisfactory completion in accordance with sound business judgment and good administrative practice of all contractual and administrative issues arising out of subagreements entered into under the assistance agreement. This includes issuance of invitations for bids or requests for proposals, selection of CONTRACTORs, award of subagreements, settlement of protests, claims, disputes and other related procurement matters.

(B) The municipality shall maintain a subagreement administration system to assure that CONTRACTORs perform in accordance with the terms, conditions and specifications of their subagreements.

(C) The municipality shall review its proposed procure7ment actions to avoid purchasing unnecessary or duplicative items.

(D) The municipality shall consider consolidating its procurement or dividing it into parts to obtain a more economical purchase.

    1.   Contractor shall make corrections required by Engineer and shall return the required number of corrected copies of Shop Drawings and submit, as required, new Samples for review and approval. Contractor shall direct specific attention in writing to revisions other than the corrections called for by Engineer on previous submittals.

6.18    *Continuing the Work*

    A.   Contractor shall carry on the Work and adhere to the Progress Schedule during all disputes or disagreements with Owner.  No Work shall be delayed or postponed pending resolution of any disputes or disagreements, including but not limited to changes in the Work, except as permitted by Paragraph 15.04 or as Owner and Contractor may otherwise agree in writing.

6.19    *Contractor's General Warranty and Guarantee*

    A.   Contractor warrants and guarantees to Owner that all Work will be in accordance with the Contract Documents and will not be defective.  Engineer and its officers, directors, members, partners, employees, agents, consultants, and subcontractors shall be entitled to rely on representation of Contractor's warranty and guarantee.

    B.   Contractor's warranty and guarantee hereunder excludes defects or damage caused by:

    1.   abuse, modification, or improper maintenance or operation by persons other than Contractor, Subcontractors, Suppliers, or any other individual or entity for whom Contractor is responsible; or

    2.   normal wear and tear under normal usage.

    C.   Contractor's obligation to perform and complete the Work in accordance with the Contract Documents shall be absolute.  None of the following will constitute an acceptance of Work that is not in accordance with the Contract Documents or a release of Contractor's obligation to perform the Work in accordance with the Contract Documents:

    1.   observations by Engineer;

    2.   recommendation by Engineer or payment by Owner of any progress or final payment;

    3.   the issuance of a certificate of Substantial Completion by Engineer or any payment related thereto by Owner;

    4.   use or occupancy of the Work or any part thereof by Owner;

    5.   any review and approval of a Shop Drawing or Sample submittal or the issuance of a notice of acceptability by Engineer;

    6.   any inspection, test, or approval by others; or

    7.   any correction of defective Work by Owner.

6.20    *Indemnification*

    A.   To the fullest extent permitted by Laws and Regulations, Contractor shall defend, indemnify and hold harmless Owner, any municipality included therein, the State of Connecticut, Engineer, and the officers, directors, shareholders, members, partners, employees, agents, consultants and subcontractors of each and any of them (collectively, the "Indemnitees") from and against all claims, costs, losses and damages (including but not limited to all fees and charges of engineers, architects, attorneys and other professionals and all court or arbitration or other dispute resolution costs) arising out of or relating to the performance (or attempted performance) of the Work, including any maintenance or warranty Work and the use, misuse, or failure of any machinery or equipment (including but not limited to scaffolding, ladders, hoists, rigging and supports) whether or not such machinery was furnished, rented, or loaned by

This document has been modified from its original form as an EJCDC document.

the Owner or any other Indemnitee.  This indemnity shall survive the termination or expiration of this Contract and shall cover all matters arising thereunder or in connection therewith, including but not limited to the following:

1.   bodily injury, sickness, disease or death or to injury to or destruction of tangible property (other than the Work itself), including the loss of use resulting therefrom, sustained or allegedly sustained by any of the Indemnitees, the Indemnitors (as hereinafter defined), the public, any person on or near the Work, or any other person or property, real or personal (including property of Owner); and caused or allegedly caused in whole or in part by any act, omission or negligence of Contractor, any Subcontractor, any Supplier, or any individual or entity directly or indirectly employed by any of them to perform any of the Work or anyone for whose acts any of them may be liable (collectively, the "Indemnitors"), regardless of whether or not caused in part by any act, omission or negligence of an individual or entity indemnified hereunder or whether liability is imposed upon such indemnified party by Laws and Regulations regardless of the negligence of any such indemnified party unless caused by the sole negligence of a party indemnified hereunder. If through the acts, omissions or negligence on the part of Contractor, any other Contractor or any Subcontractor shall suffer loss or damage on the Work, Contractor shall settle with such other Contractor or Subcontractor by agreement or arbitration if such other Contractor or Subcontractor will so settle. If such other Contractor or Subcontractor shall assert any claim against s any one or more of the Indemnitees on account of any damage alleged to have been sustained, Owner shall notify Contractor, who shall indemnify, defend and save harmless such Indemnitees  against any such claims.

2.   Failure of Contractor in any way to comply with the requirements of the Fair Labor Standards Act, as amended, and all other applicable Laws and Regulations (including but not limited to the Occupational Safety and Health Act of 1970) or any term or provision of the Contract or General Conditions.

B.   Contractor shall indemnify, defend and save harmless the Indemnitees, from all claims for payment of labor used on and materials furnished for the Work, including taxes applicable thereto, all claims for damages sustained or alleged to be sustained in consequence of any improper materials, implements or labor used, or resulting from any violation by the Contractor, its employees, subcontractors, material suppliers or agents of any law, municipal ordinance or any regulation, decree or order of any governmental agency having jurisdiction over the Work or any part thereof, or because of pauper or indigent employees brought to any city or town for the performance of the Work and having no settlement therein and all claims against the Indemnitees for alleged infringement of patents by the Indemnitees or by reason of any method of construction used in the Work or the use of any appliance, process, apparatus or material which may be furnished under the Contract.

C.   In any and all claims against any of the Indemnitees by any employee (or the survivor or personal representative of such employee) of any of the Indemnitors , the indemnification obligation under Paragraphs 6.20.A and 6.20.B shall not be limited in any way by any limitation on the amount or type of damages, compensation, or benefits payable by or for Contractor or any such Subcontractor, Supplier, or other individual or entity under workers' compensation acts, disability benefit acts, or other employee benefit acts.

D.   The indemnification obligations of Contractor under Paragraphs 6.20.A and 6.20.B shall not extend to the liability of Engineer and Engineer's officers, directors, members, partners, employees, agents, consultants and subcontractors arising out of:

1.   the preparation or approval of, or the failure to prepare or approve maps, Drawings, opinions, reports, surveys, Change Orders, designs, or Specifications; or

2.   giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage.

E.   If Contractor fails to defend any Indemnitee hereunder, such Indemnitee may defend any suit, action or other legal proceeding and the costs thereof (including, without limitation, attorneys' fees) shall be

This document has been modified from its original form as an EJCDC document.

included as part of the loss, cost, damage and expense covered by the foregoing indemnities of Contractor.

6.21    *Delegation of Professional Design Services*

A.    Contractor will not be required to provide professional design services unless such services are specifically required by the Contract Documents for a portion of the Work or unless such services are required to carry out Contractor's responsibilities for construction means, methods, techniques, sequences and procedures.    Contractor shall not be required to provide professional services in violation of applicable law.

B.    If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of Contractor by the Contract Documents, Owner and Engineer will specify all performance and design criteria that such services must satisfy.    Contractor shall cause such services or certifications to be provided by a properly licensed professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional.    Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to Engineer.

C.    Owner and Engineer shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications or approvals performed by such design professionals, provided Owner and Engineer have specified to Contractor all performance and design criteria that such services must satisfy.

D.    Pursuant to this Paragraph 6.21, Engineer's review and approval of design calculations and design drawings will be only for the limited purpose of checking for conformance with performance and design criteria given and the design concept expressed in the Contract Documents.    Engineer's review and approval of Shop Drawings and other submittals (except design calculations and design drawings) will be only for the purpose stated in Paragraph 6.17.D.1.

E.    Contractor shall not be responsible for the adequacy of the performance criteria or design criteria contained in the Contract Documents.

6.22    *Excavations Near Underground Utility Facilities*

A.    GENERAL

1.    In compliance with the State of Connecticut Public Act No. 87-71 and section 16-345 of the Regulations of Connecticut State Agencies (RCSA) and any modifications or updates thereto, "An Act Concerning Excavations Near Underground Utility Facilities", the Contractor shall not start any kind of excavation and/or blasting of rock activity near the location of any kind of public utility facility without having first ascertained the location of all such utilities in the area.

2.    For this, Contractor shall notify CBYD (Call Before You Dig, Inc.)(Toll Free No. 1-800-922-4455) at least two (2) full working days in advance (excluding Saturday, Sunday and Holidays), but not more than one (1) month before starting any such work. Such notice shall include the name, address and telephone number of the person/agency performing the Work and the date and type of excavation. The CBYD will immediately transmit such information to the utility companies whose facilities may be affected. Utility companies receiving notice shall mark-up the locations of their utilities on site and/or inform the Contractor if they do not have their utilities in the area. If the Contractor does not receive any information or mark-up of the locations on site, Contractor shall contact CBYD and verify if the utility companies have responded to Contractor's call. Under no circumstances, shall the Contractor be allowed to start any kind of excavation and/or blasting work prior to **obtaining all the necessary information regarding the location of underground utilities at the Site**. It will be the Contractor's responsibility to contact and have all utilities marked on Site prior to starting the Work. Contractor shall coordinate construction activities with all utility company facility relocations and replacements. Contractor shall provide adequate support and protection of all existing facilities in accordance with the utility companies' standards. All utility relocations and replacements on municipal property shall be paid for by the respective utility

This document has been modified from its original form as an EJCDC document.